IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| BILLY A. SPEAGLE,<br>  Plaintiff,<br><br>v.<br><br>GREG DONATHAN, *et al.*<br>  Defendants. | Case No. 4:23-cv-04148-JEH |

### Order

Plaintiff, Billy A. Speagle, a civil detainee in the Illinois Department of Human Services ("IDHS"), filed suit against Defendants under 42 U.S.C. § 1983. Pursuant to the Court's Merit Review (Doc. 7), Plaintiff stated a Fourteenth Amendment Due Process claim for failure to provide adequate mental health treatment against Defendants Greg Donathan, Erin Posey, and Cody Waterkotte (collectively, the "IDHS Defendants") and against Defendants Shan Jumper, Sharlene Caraway, Nicole Velez, Courtney Rhoades, Gerald Carreon, Natalia Bygrave, Eleanor Schupick, Julie Goddard, and Cora Bezold (collectively, the "Liberty Defendants").

This matter is now before the Court on motions for summary judgment filed by the IDHS Defendants (Doc. 45) and the Liberty Defendants (Doc. 43), to which Plaintiff did not file any response. For the reasons stated herein, those motions are GRANTED.

### I

The following background facts are taken from the statement of undisputed facts sections in Defendants' summary judgment motions. Doc. 43, p. 2-47 ¶¶ 1-346, Doc. 45, p. 1-2 ¶¶ 1-9. Plaintiff did not respond to any of Defendants' proposed undisputed material facts nor did Plaintiff propose additional material facts. Pursuant

to Local Rule 7.1(D)(2)(b)(6), Defendants' proposed facts are therefore deemed admitted.[1] Further, the Court finds that Defendants' exhibits filed with their motions support their proposed facts.

Given the extensive list of undisputed facts (numbering over 350) the Court summarizes herein only those facts that are most relevant to the resolution of the instant motion.

Plaintiff is a civil detainee at the Illinois Department of Human Services ("IDHS") Rushville Treatment and Detention Facility ("Rushville"). Doc. 45, p. 1 ¶ 1. Plaintiff is detained pursuant to the Illinois Sexually Violent Persons ("SVP") Act, 725 Ill. Comp. Stat. 207/1 *et seq*. *Id*. Plaintiff and other residents are detained at Rushville by court order. Doc. 43, p. 45 ¶ 329.

Defendants Donathan and Posey serve in administrative capacities at Rushville: Donathan as Facility Director and Posey as Assistant Program Director. Doc. 45, p. 1 ¶ 2. Defendants Donathan and Posey do not participate in the day-to-day clinical treatment of Rushville residents, including Plaintiff. Doc. 45, p. 2 ¶ 4.

Plaintiff's treatment program is designed and overseen by licensed clinicians and treatment decisions are made solely by his treatment team, which includes Liberty Healthcare personnel. Doc. 45, p. 2 ¶ 3. Defendants Carreon, Goddard, Caraway, Schupick, Bezold, Bygrave, Jumper, Rhoades, and Velez are employed by Liberty Healthcare and work at Rushville: Carreon as a Team Leader, Goddard, Schupick, and Bezold as licensed clinical therapists, Bygrave as a Masters-educated licensed associate sex offender provider, Rhoades and Velez as red team members, Caraway as Associate Clinical Director, and Jumper as Clinical Facility Director. Doc.

---

[1] A district court does not abuse its discretion by strictly enforcing local and procedural rules, even against a pro se litigant. *Robinson v. Wexford Health Sources, et al.*, No. 22-1717, 2024 WL 676433, at *2 (7th Cir. Feb. 20, 2024) (unreported), citing *McCurry v. Kenco Logistics Services, LLC*, 924 F.3d 783, 737 n.2 (7th Cir. 2019).

45, p. 10 ¶¶ 75, 77, p. 14 ¶ 100, p. 15 ¶ 110, p. 18 ¶ 136, p. 20 ¶¶ 149-151, p. 26 ¶ 193, p. 38 ¶¶ 254, 266, p. 43 ¶¶ 311-312.

Plaintiff testified in his deposition in this matter that he believes all of the Liberty Defendants in this case are still on his treatment team. Doc. 43, p. 3 ¶ 3. Defendant Schupick was a therapist on the red team at all times relevant to the instant suit. Doc. 43, p. 20 ¶ 152. Defendants Bygrave, Rhoades, and Velez also worked on the red team during certain relevant times. Doc. 43, p. 14 ¶ 100, p. 37 ¶ 255. Plaintiff acknowledged that Defendants Donathan and Posey did not determine group assignments, therapeutic interventions, or treatment progression. Doc. 45, p. 2 ¶ 9.

As Clinical Director and Associate Clinical Director, Defendants Jumper and Caraway are not member of the red team and do not regularly provide clinical treatment to Rushville residents. Rather, they are responsible for the daily clinical operations of the facility, which includes overseeing all clinical staff in a supervisory role, and they may observe or treatment groups or substitute for facilitators on occasion. Doc. 45, p. 18-19 ¶¶ 137-141, p. 44 ¶¶ 313-316, 318.

All residents at Rushville are offered treatment through a plan known as Phase Treatment. Doc. 43, p. 13 ¶ 90. This five phase treatment program is a well-known and nationally-recognized standard for sex offender treatment. Doc. 43, p. 13 ¶ 91, p. 45 ¶ 328. The main goal of treatment is to help residents refrain from engaging in the behaviors which led to their commitment to the facility. Doc. 43, p. 13 ¶ 93. However, successful treatment does not always equal immediate release from the facility. Doc. 43, p. 46 ¶ 333. The treatment team at Rushville has no legal authority to release a resident from the facility. Doc. 43, p. 13 ¶ 94.

Plaintiff is suing Defendant Schupick because he claims that during a group therapy session in January 2023 she called Plaintiff something like a "stupid idiot" or "stupid motherfucker" for not taking medication that the psychiatrist had ordered him to take. Doc. 43, p. 3 ¶¶ 5-8, Doc. 45, p. 2 ¶ 5. Specifically, on January 19, 2023, Plaintiff was the group member "on focus" during disclosures group, at which time

he informed the group that two days prior he had stopped taking all psychotropic drugs prescribed by the psychiatrist because the psychiatrist "frustrated him and was extremely unprofessional." Doc. 43, p. 21 ¶ 163. Defendant Speagle admits that she reprimanded Plaintiff for stopping his medications due to his feelings about the psychiatrist and told him in front of other group members that taking his medications was stupid, or something similar. Doc. 43, p. 22 ¶ 167.

Defendant Schupick noted that Plaintiff was slightly more agitated and reactive since stopping his psychotropic drugs in January 2023. Doc. 43, p. 21 ¶ 165. Plaintiff alleges that he got upset thinking about the encounter with Defendant Schupick and this caused him to need medication from his psychiatrist. Doc. 43, p. 5 ¶ 29. This medication was Ativan, which Plaintiff had already been taking prior to January 2023. Doc. 43, p. 5 ¶ 30.

Plaintiff alleges that this interaction with Defendant Schupick triggered his PTSD, leading to his removal from his assigned disclosure group and reassignment to the "Power to Change" program. Doc. 43, p. 4 ¶ 15, Doc. 45, p. 2 ¶ 6. Plaintiff testified in his deposition in this case that he was placed in Power to Change because he was told he was not working on his PTSD symptoms. Doc. 43, p. 3 ¶ 12.

However, the decision to refer Plaintiff to Power to Change came many months after the January 2023 group and had nothing to do with his interaction with Defendant Schupick where he reported he had stopped taking his medications. Doc. 43, p. 21 ¶ 160. Plaintiff continued to attend the disclosures group facilitated by Defendant Schupick during February through May 2023, and was generally noted to be an active participant in the group during that time. Doc. 43, p. 22-25 ¶¶ 170-184.

On June 1, 2023, Plaintiff refused to work with his treatment team and advised that he wanted to go to a different team. Doc. 43, p. 25 ¶ 185. He walked out of group on that date. *Id*. On June 15, 2023, Plaintiff indicated that he did not believe any of the dialectical behavioral therapy ("DBT") groups were helping with his PTSD and indicated that he was unsure whether he would be coming back. Doc. 43, p. 25 ¶ 186.

On June 22, 2023, Defendants Schupick and Bezold worked Plaintiff through an additional ground technique he could use when experiencing PTSD symptoms. Doc. 43, p. 25 ¶ 187.

On July 6, 2023, Plaintiff advised the group that he was in the process of removing himself from the red team and did not feel it was the best fit for him. Doc. 43, p. 25-26 ¶ 188. Plaintiff also indicated he felt there was no point in talking to the group about events from his distant past. *Id*. On July 13, 2023, Defendants Schupick and Bezold met with Plaintiff and advised him that he was being removed from disclosure group and invited to Power to Change. Doc. 43, p. 26 ¶ 189. They provided him with a Power to Change referral form, which explained why he was being referred. *Id*. On July 14, 2023, nonparty evaluator Mark Kuzia authored a written report identifying a substantial probability that Plaintiff would engage in acts of sexual violence in the future. Doc. 43, p. 47 ¶¶ 345-346.

Plaintiff is suing Defendant Bezold because she was in the group room during the foregoing interaction with Defendant Schupick in January 2023. Doc. 43, p. 4 ¶ 18. Plaintiff claims that Defendant Bezold should have intervened to protect Plaintiff from Defendant Schupick's speech and then should have publicly admonished Schupick in front of the group and written an incident report. Doc. 43, p. 4 ¶¶ 19-20, 22, p. 5 ¶ 23-25.

Defendant Bezold recalls Defendant Schupick stating that it was stupid of Plaintiff not to take prescribed medications. Doc. 43, p. 27 ¶ 196. Defendant Bezold had no way to know what Defendant Schupick would say before she said it, and Defendant Bezold would not publicly admonish another therapist in front of residents. Doc. 43, p. 27 ¶ 198. During a February 2023 meeting, Plaintiff told Defendant Bezold that he had felt belittled and powerless due to Defendant Schupick's admonition of him, and Defendant Bezold commended Plaintiff for having remained regulated during that interaction. Doc. 43, p. 29 ¶ 209.

Plaintiff is suing Defendants Velez and Rhoades because he alleges that he told them about his interaction with Defendant Schupick and asked them to talk to Defendant Carreon but he does not know if Defendants ever spoke to Carreon or not and he therefore felt that he was left alone. Doc. 43, p. 5-6 ¶¶ 27-28, 31, 33-34.

Defendant Carreon was made aware that Plaintiff was in Power to Change and agreed with the recommendation by his facilitators. Doc. 43, p. 12 ¶ 81. The entire treatment team agreed with the treatment decisions made involving Plaintiff. Doc. 43, p. 14 ¶ 99.

Plaintiff is suing Defendant Carreon because he is the head of the red team and Plaintiff does not believe he helped with Plaintiff's problems. Doc. 43, p. 8 ¶ 53. Defendant Carreon would never admonish any team member in front of a resident. Doc. 43, p. 13 ¶ 85.

Plaintiff claims that Defendant Carreon did not sign off on all of Plaintiff's phase 2 paperwork on the day Plaintiff completed assignments and that Defendant Carreon did not explain to him why he was placed in Power to Change. Doc. 43, p. 8 ¶¶ 53-55. The timing of Defendant Carreon's signature on Plaintiff's homework has not delayed Plaintiff's progress in treatment, and Plaintiff was never held back due to the lack of a signed homework page. Doc. 43, p. 12 ¶ 88, p. 15 ¶ 105. Plaintiff met with Defendants Carreon and Velez on July 20, 2023, at which time Plaintiff was given a copy of his July 13, 2023, referral to Power to Change, which listed his barriers, and Defendants informed Plaintiff that his barriers included lack of effort which created a conflict with his treatment goals. Doc. 43, p. 12 ¶¶ 82-83.

Plaintiff is suing Defendant Caraway based upon her role as a supervisor, including for Defendant Schupick. Doc. 43, p. 7 ¶ 43. Plaintiff claims that he sent Defendant Caraway requests to speak about his interaction with Defendant Schupick and that she did not respond. Doc. 43, p. 7 ¶ 41. Plaintiff wanted Defendant Caraway to intervene on his behalf and tell Defendant Schupick that she could not speak to him in the manner that Plaintiff alleges. Doc. 43, p. 7 ¶ 42.

Defendant Caraway does not recall receiving any complaints or other communications from Plaintiff, but if she had received complaints from him she would have reviewed them with the team leader and would not have discussed them in front of Plaintiff or any other resident. Doc. 43, p. 19 ¶¶ 146, 148.

Plaintiff also alleges that he submitted written letters describing the incident with Defendant Schupick to Defendants Posey and Donathan as well as to Defendant Waterkotte, an investigator at Rushville. Doc. 43-1, 18:3-5, Doc. 45, p. 2 ¶ 7. Plaintiff testified that he did not receive a substantive response from Defendants Posey, Donathan, or Waterkotte. Doc. 43-1, 18:5-6, Doc. 45, p. 2 ¶ 8.

Defendant Jumper was never a member of Plaintiff's treatment team and had no personal involvement in recommending that Plaintiff be placed in Power to Change. Doc. 43, p. 45-46 ¶¶ 324, 338. However, Defendant Jumper agrees that Power to Change is a useful tool available to therapists when dealing with a resident's barriers to treatment. Doc. 43, p. 45 ¶ 325.

Plaintiff is suing Defendant Jumper because Plaintiff alleges that he spoke with Jumper about his efforts to get back into his disclosures group but Defendant Jumper did not get back to him, even when Plaintiff sent another request. Doc. 43, p. 7 ¶¶ 44-46. Defendant Jumper would defer to the treatment team's collective judgment in recommending that a resident be placed in Power to Change. Doc. 43, p. 46 ¶ 339. Dr. Jumper is not aware of any information that would suggest that Plaintiff's treatment required intervention from him. Doc. 43, p. 47 ¶ 342.

Plaintiff agrees that once he was in Power to Change, he completed his assignment and was referred back to his regular group. Doc. 43, p. 4 ¶ 16. Plaintiff had been in phase 2 (disclosure) when he filed this case. Doc. 43, p. 13 ¶ 92. As of the filing of the summary judgment motions, Plaintiff was continuing treatment on the red team and had progressed to phase 3 (post-disclosure). Doc. 43, p. 2-3 ¶¶ 1-2, 4, p. 4 ¶ 17. Plaintiff admits that since he has been returned to phase 3 he has not had any problems. Doc. 43, p. 9 ¶ 58. Plaintiff would not have advanced to phase 3 sooner had

he not been transferred to and successfully completed Power to Change. Doc. 43, p. 14 ¶ 97.

Plaintiff is suing Defendant Goddard because he alleges that when she was his therapist she repeatedly asked him about an incident where he masturbated on a naval ship. Doc. 43, p. 6 ¶ 35. Plaintiff also alleges that Defendant Goddard asked him questions about his predicate offense, sometime in early 2022. Doc. 43, p. 6 ¶ 36. Plaintiff claims that Defendant Goddard asking about the foregoing set off his PTSD and that he was upset by being called a child molester by Defendant Goddard. Doc. 43, p. 6 ¶¶ 37-38. Plaintiff admits that his underlying sex offense case is against a child. Doc. 43, p. 6 ¶ 39.

Defendant Goddard was a cofacilitator of Plaintiff's disclosure group in 2021. Doc. 43, p. 16, ¶ 113. In that role, she worked with Plaintiff on his autobiography and timeline, which was Plaintiff's opportunity to present his history of offenses to the group, in order to discuss them openly and honestly so as to allow the treatment to assess Plaintiff and identify potential causes and triggers for his offending behavior. Doc. 43, p. 17 ¶ 125.

In April 2021, Defendant Goddard and Plaintiff did discuss his sexual history, including his participation in sexual activity during his time in the Navy, while he was the group member "on focus." Doc. 43, p. 17-18 ¶¶ 127-129. Discussion of one's sexual history is a standard component of disclosure group. Doc. 43, p. 18 ¶ 130. Defendant Goddard does not recall using the words "child molester" with Plaintiff, but agrees that she would have discussed that Plaintiff's victims were children and that he could not have pictures of children. Doc. 43, p. 18 ¶ 131.

Defendant Goddard transferred to another team in mid-2022, after which she no longer made decisions or had any input with Plaintiff's treatment team. Doc. 43, p. 18 ¶¶ 132-133.

Plaintiff is suing Defendant Bygrave because he alleges that she called him a liar in front of Defendant Schupick and he was embarrassed and believed others

would think he was a liar. Doc. 43, p. 7-8 ¶¶ 48-49. Defendant Schupick did not observe any such interaction. Doc. 43, p. 22 ¶ 168.

Defendant Bygrave did not call Plaintiff a liar. Doc. 43, p. 38 ¶ 258. Rather, she advised Plaintiff that she had reached out to Dr. Speaker, who denied Plaintiff's claim that Dr. Speaker had told him not to take the penile plethysmography ("PPG") test required to advance to the next level of treatment. Doc. 43, p. 38 ¶¶ 259-261. Defendant Bygrave learned that Dr. Speaker had recommended Plaintiff temporarily defer testing until trauma symptoms had resolved. Doc. 43, p. 43 ¶ 304. Plaintiff was provided advice and recommendations as to how to deal with his PTSD symptoms while taking the PPG test. Doc. 43, p. 41 ¶ 293. Since filing this lawsuit, Plaintiff has taken the PPG in July 2024 and, as discussed above, has been referred to post-disclosure group (phase 3). Doc. 43, p. 38 ¶¶ 263, 310.

Plaintiff agrees that one of the reasons he is filing this suit is to influence the decision of the state court handling his SVP claim, as he wishes to be placed on conditional release and believes that he would be placed on conditional release sooner if he progressed through treatment at a faster pace. Doc. 43, p. 10 ¶¶ 69-70. None of the Rushville treatment team members have any authority to order detention or release of the residents from the facility or to alter the conditions of their detention. Doc. 43, p. 45-46 ¶¶ 330, 334. These decisions are made by the court in the underlying SVP cases. *Id*.

II

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in his favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must

be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### III

Again, Plaintiff is proceeding in this case on a Fourteenth Amendment Due Process claim for failure to provide adequate mental health treatment against Defendants. Doc. 7, p. 3. Based upon the factual record before the Court at summary judgment, Plaintiff complains of two general types of actions by Defendants: (1) his referral to Power to Change by the red team treatment providers and (2) alleged name-calling by Defendants Schupick, Bygrave, and Goddard for which other Defendants did not reprimand them.

### A

Civil detainees are constitutionally entitled to conditions and duration of confinement that bear some reasonable relationship to the purposes for which they are committed. *Allison v. Snyder*, 332 F.3d 1076, 1079 (7th Cir. 2003). Officials must provide "some treatment" for the underlying mental health conditions that led to a resident's confinement, but the nature of that treatment is left to the discretion of qualified mental health professionals. *Id.* at 1081. Treatment decisions are "presumptively valid" and entitled to deference, unless the evidence shows that a decision constituted "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2009); *see also Youngberg v. Romeo*, 547 U.S. 307, 323 (1982).

As a preliminary matter, the Court notes that the record does not support Plaintiff's allegation that all Defendants were personally involved in or responsible for his treatment. "A plaintiff bringing a civil rights action must prove that the

defendant personally participated in or caused the unconstitutional actions." *Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981).

However, even assuming all Defendants had some involvement in Plaintiff's referral to Power to Change, Plaintiff's placement in that group did not violate his Fourteenth Amendment rights.

First, based upon the undisputed facts, Plaintiff was referred to Power to Change in July 2023 to address barriers to treatment. The existence of barriers was well-supported by records showing that Plaintiff refused (or believed himself unable) to attempt the required PPG test to progress from phase 2 to phase 3; Plaintiff's reports that he did not believe that any PTSD treatment or coping strategies were effective in managing his symptoms; and his own recurring statements in June and July 2023 that he wanted to be placed on a different treatment team and wanted to remove himself from the red team. In sum, there is no plausible evidence that the Defendants on Plaintiff's treatment team made an arbitrary assessment that he was facing barriers to treatment in July 2023.

Further, there can be no doubt that Plaintiff was receiving "some treatment" as required under the Fourteenth Amendment, even when he was placed in the Power to Change group instead of the red team disclosure group. *Allison*, 332 F.3d at 1079. In fact, Plaintiff successfully progressed from phase 2 to phase 3 after being placed in Power to Change.

Finally, there is no evidence whatsoever that Defendants' treatment decisions substantially departed from the accepted professional judgment, practice, or standards. The five phase treatment program implemented by Defendants is a nationally-recognized standard for sex offender treatment. Plaintiff did not have a constitutional right to remain in any specific treatment group, and his disagreement with the treatment team's decisions is insufficient to impose constitutional liability. *Williams v. Ortiz*, 937 F.3d 936, 944 (7th Cir. 2019).

For the foregoing reasons, Defendants are entitled to summary judgment in their favor on Plaintiff's Fourteenth Amendment claim.

B

As for Plaintiff's allegations that Defendant Schupick called him stupid, Defendant Bygrave called him a liar, and Defendant Goddard called him a child molester, most verbal harassment—aside from pervasive sexual harassment that causes severe psychological harm—does not give rise to an independent constitutional violation. *Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015). Even viewing the facts in the light most favorable to Plaintiff, these incidents were brief and isolated.

Further, they cannot give rise to a Fourteenth Amendment claim where they had no impact on Plaintiff's treatment. Although Plaintiff alleges that Defendant Schupick referred to him as stupid in January 2023, the undisputed record establishes that he continued to actively participate in red team disclosure group for months before he was referred to Power to Change in July 2023. Despite Plaintiff's allegations, there can be no plausible inference that Plaintiff's referral to Power to Change was a result of the isolated incident in January 2023. *See Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010) (court's favor toward the non-moving party does not extend to drawing inferences that are only supported by speculation or conjecture). Moreover, as discussed in subsection A, *supra*, referral to Power to Change was not a hindrance to Plaintiff's treatment, as he subsequently progressed from phase 2 to phase 3.

Plaintiff alleged that Defendant Bygrave called him a liar in response to his assertion that Dr. Speaker told him not to take the PPG test required to advance to the next level of treatment. However, this alleged incident likewise had no impact on Plaintiff's treatment, as Defendant Bygrave learned that Dr. Speaker had recommended Plaintiff temporarily defer testing until trauma symptoms had resolved, Plaintiff was provided advice and recommendations as to how to deal with

his PTSD symptoms while taking the PPG test, Plaintiff was referred to Power to Change, and Plaintiff has since taken the PPG and progressed to phase 3.

Finally, although Defendant Goddard does not recall referring to Plaintiff as a "child molester," the record nevertheless establishes that discussion of sexual history, including underlying offenses and their causes/triggers, was part of group treatment and that Plaintiff's convictions are for sexual offenses against children. Further, Defendant Goddard allegedly made this isolated comment years before Plaintiff filed suit and she was not part of his treatment team for over a year before he was identified as having barriers to treatment progression and removed from phase 2. There is no evidence in the record to suggest that Plaintiff's treatment was inadequate or stalled due to Defendant Goddard's alleged comment regarding Plaintiff's past sexual offenses.

## IV

For the foregoing reasons, Defendants' Motions for Summary Judgment [43], [45] are GRANTED. Summary judgment shall enter in favor of Defendants and against Plaintiff.

Defendants' Motion to Substitute Counsel [48] is GRANTED.

If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis MUST identify the issues Plaintiff wishes to present on appeal, to assist the Court in determining whether the appeal is taken in good faith. *See* Fed. R. App. P. 24(a)(1)(c); *see also Celske v Edwards*, 164 F.3d 396, 398 (7th Cir. 1999) (an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith."); *Walker v. O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000) (providing that a good faith appeal is an appeal that "a reasonable person could suppose…has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $605.00 appellate filing fee regardless of the outcome

of the appeal. If the Court allows him to proceed on appeal in forma pauperis that finding would allow Plaintiff to pay the appellate filing fee over time but would not release him from having to pay the fee.

This case is terminated.

*It is so ordered.*

Entered on August 15, 2025.

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE